# Raiguel and Others' Appeal.

1. W. agreed with R. to engage in the employ of R. & Co., in consideration R. agreed to pay him $2500 per annum, and also to pay to Mrs. W. six per cent. of the profits of R. & Co., "after deducting losses and expenses, less the sum of $2500 per annum;" the amount to be paid to both was to be equal to six per cent. of the profits of R. & Co.; next day R., with a number of others, not including W., made an agreement forming the firm of R. & Co., the profits to be divided in proportions mentioned, R. agreeing to pay "the salary" of W. *Held*, not to make W. a partner in R. & Co.

2. At the expiration of the partnership the same members. except one, continued as its successor as R. & Co. (2); under a new agreement with the same stipulation as to paying W.'s salary by R. About the same time W., R. and E. entered into an agreement, W. agreeing with R. to serve R. & Co. (2) as clerk, R. to pay W. $2500 per annum, and in consideration of indebtedness of W. to E., R. agreed with E. that if $2500 should not equal eight per cent. of the profits of the firm, R. would pay E. as much more as would make the eight per cent. after paying losses, &c., to be credited on W.'s debt to E. *Held*, not to constitute W. a partner in R. & Co. (2).

3. The firm was continued as R. & Co., (3) by another agreement with the

same members and also W.; it went into liquidation. No. 2 was indebted to No. 3; the accounts of each member in No. 2, treating W. as a member, were continued in No. 3; all the members of No. 2 had overdrawn there; W.'s salary there was charged to his account as if received by him as a *partner*, he thus appearing to have overdrawn. The collections in liquidation were paid to No. 3 and there credited to the account of each member, including W., in the proportion of his interest. In a bill by W. against the other partners in No. 3 for an account, &c., a balance was found in favor of W., and it was decreed that the other partners of No. 3 were *jointly* liable to him for the amount.

4. If the assets of firm A. B. & C. are applied to pay the debts of a former firm of A. & B. without C.'s consent, A. & B. are liable *in solido* to A. B. & C., and A. & B. in equity are liable to C. for his share of such debts.

5. Settlement of accounts of successive firms with each other considered in this case.

January 4th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Appeal from the decree at Nisi Prius No. 8, to January Term 1862. In Equity.

The bill was filed September 21st 1861, by John L. Wentworth against William Raiguel, Augustus H. Raiguel, Samuel Moore, William G. Skillman, William F. Smith, James M. Whitby, Benjamin Bentley, Christian Kintzle, George Eckert, Edward A. Adams and Henry P. Atkinson.

The bill alleged as follows :—

The plaintiff was a partner in the firm of Raiguel & Co. No. 3, the successor of two preceding firms of the same name designated No. 1 and No. 2 respectively. No. 2 was composed of the same members as No. 3, except that the plaintiff and Adams and Atkinson, defendants, were in No. 3. No. 1 was composed of the same members as No. 2 with addition of George Eckert. No. 3 had been succeeded by the firm of Raiguel, Moore & Co., in which plaintiff was not a partner; the defendants comprised all the individuals,—except plaintiff and John J. Ulp, then deceased,—who had been members of either of the firms; the firm of Raiguel, Moore & Co. was composed of those who had been members of one or more of the other firms; a majority of the members of Raiguel, Moore & Co. had been members of all the firms; that firm was insolvent and was collecting the assets of the three former firms, all which assets belonged to No. 3; Raiguel, Moore & Co. were improperly applying these assets in the purchase of their own paper at a discount and wasting and mismanaging these assets. No. 3 was indebted to the plaintiff in a large amount; he was interested in the distribution of these assets; his interests were not safe in the hands of Raiguel, Moore & Co., and were damaged by their mismanagement, and he would suffer loss if they were permitted to collect the partnership debts, &c.

The prayer was for an account of all sums received by or for the defendants in respect to the partnership transactions, both as

to receipts and expenditures; for a decree that defendants pay plaintiff what might be found due to him; for the appointment of a receiver and for an injunction to restrain defendants from collecting or receiving debts owing No. 3, or interfering with its assets or property, and for general relief.

The answer of William Raiguel, Augustus H. Raiguel, Samuel Moore, William G. Skillman, James M. Whitby, Christian Kintzle, George Eckert, Edward A. Adams and Henry P. Atkinson, filed October 5th 1861, admitted that plaintiff was a member of No. 3, that No. 1 and No. 2 were composed of the individuals named in the bill; but averred that the plaintiff was interested in No. 2, under an agreement (annexed to answer) between him and William Raiguel, by which agreement Raiguel's interest in the profits of the firm as provided by the articles of partnership, was greater by 8 per cent. than they otherwise would have been; plaintiff was interested, also, in No. 1, the extent and character of which would appear by another agreement between him and William Raiguel (annexed to answer), on account of which agreement Raiguel's profit in that firm under the articles of partnership, was greater by 6 per cent. than it otherwise would have been; nothing was due to plaintiff, but he was indebted to No. 3, having overdrawn his account more than $3000; it denied that upon a just settlement of the affairs of the first three firms there would be anything due to plaintiff from his co-partners, and averred the belief that the assets of No. 3 were not more than sufficient to pay its liabilities, and there would not be any profits for distribution amongst the partners.

On the 8th of February 1862, the answer was amended by adding an averment, that whatever interest plaintiff had in No. 3, had been levied on since filing the bill and answer and sold by the sheriff to Edward G. James.

On the 13th of October 1862, the bill was amended by averring that plaintiffs, before the bill was filed and before the sale mentioned in the amended answer, had assigned all his interest in No. 3 to Catharine H. Wentworth, Mark H. Wentworth and George J. Wentworth, executors, &c., of Eben Wentworth, deceased, as collateral security for a debt due by plaintiff to the estate of the deceased, who was his father.

On the 15th of March 1867, Samuel C. Perkins, Esq., was appointed master.

On the 13th of June 1867, E. D. James answered, denying knowledge of the matters alleged in the bill and amendment and averring that he had purchased all the plaintiff's right in No. 3 at sheriff's sale.

On the 21st of June 1868, the deaths of Christian Kintzle and George Eckert were suggested and their respective executors and administrators were substituted.

[Raiguel's Appeal.]

October — 1868 Smith and Bentley answered, alleging that they had assigned their interests in the several firms of Raiguel & Co., Smith before and Bentley since the filing of the bill.

April 21st 1869, the death of Augustus H. Raiguel was suggested and his executrix substituted as a defendant.

May 28th 1870, the death of Edward G. James was suggested and his administrator substituted as a defendant.

January 25th 1871. The answer was amended by averring the assignment, June 17th 1867, to Samuel Moore of E. G. James's interest in John L. Wentworth's right, &c., in the firm of Raiguel & Co.

March 11th 1871, by leave of court, plaintiffs amended the bill by adding the name Harriet K. Ulp, administratrix, &c., of John J. Ulp, deceased, as a defendant, and May 6th she answered denying any knowledge, information or belief as to the matters involved in the controversy.

The respective firms were composed as follows:—

| Raiguel & Co., No. 1. (January 1st 1853.) | Raiguel & Co., No. 2. (January 1st 1855.) | Raiguel & Co., No. 3. (January 1st 1857.) | Raiguel, Moore & Co. (March 1858.) |
|---|---|---|---|
| William Raiguel, | William Raiguel, | William Raiguel, | William Raiguel, |
| Augustus H. Raiguel, | Augustus H. Raiguel, | Augustus H. Raiguel, | |
| Samuel Moore, | Samuel Moore, | Samuel Moore, | Samuel Moore, |
| William G. Skillman, | William G. Skillman, | William G. Skillman, | William G. Skillman, |
| James M. Whitby, | James M. Whitby, | James M. Whitby, | James M. Whitby, |
| William F. Smith, | William F. Smith, | William F. Smith. | |
| Benjamin Bentley, | Benjamin Bentley, | Benjamin Bentley, | |
| Christian Kintzle, | Chistian Kintzle, | Christian Kintzle, | |
| | | Edward A. Adams, | Edward A. Adams, |
| | | Henry P. Atkinson, | Henry P. Atkinson. |
| John J. Ulp, | John J. Ulp. | John J. Ulp, | |
| George Eckert. | | | |
| | | John L. Wentworth. | |

The master found the following facts:—

"Prior to 1853, there had been in the importing and wholesale dry goods business in this city, several successive firms under the names of Eckel, Raiguel & Co., Nos. 1 and 2. John L. Wentworth had for some years been in the employ of these firms as a clerk. The formation of a new firm being contemplated, William Raiguel, who had been a member of the preceding firms, and was to be the principal member of the new firm, on the 31st of December 1852, entered into an agreement, under seal, with John L. Wentworth. By this agreement, Wentworth was to devote himself to the employ of Raiguel & Co. for the years 1853 and 1854; and in consideration William Raiguel agreed to pay him $2500 per annum, 'and also to pay to Mrs. Martha Wentworth, for her own use and benefit, a sum of money equal to six per cent. of the net profits of the business of Raiguel & Co. (after deducting all losses and expenses), for the years 1853 and 1854, less the sum of $2500 per annum; it being understood that the amount to be paid to J. L. Wentworth and to Mrs. Martha Wentworth, together, shall be equal in amount to six per cent. of the net profits of the business of Raiguel & Co. for the two years before mentioned.' It

[Raiguel's Appeal.]

was also thereby agreed, that in case of J. L. Wentworth's death during either of said years, the compensation to be paid to him and Mrs. Wentworth, should 'continue to be paid to the end of the year in which the death took place, unless the surviving partners choose to dissolve the partnership previous thereto.'

" On the 1st of January 1853, William Raiguel, Augustus H. Raiguel, Samuel Moore, John J. Ulp, William G. Skillman, William F. Smith, George Eckert, James M. Whitby, Benjamin Bentley, and Christian Kintzle entered into articles of co-partnership under the name and style of Raiguel & Co. This is 'Raiguel & Co., No. 1.' By these articles, the business was to be carried on at the store lately occupied by Eckel, Raiguel & Co., the partnership to continue for two years. The capital was to be the respective amounts credited to each of the parties, on the books of the firm of Eckel, Raiguel & Co., No. 2, interest to be credited at the rate of 6 per cent. The net profits were to be divided as follows : William Raiguel, 31½ per cent., Augustus H. Raiguel, 19½ per cent., Samuel Moore, 17 per cent., and the remaining partners from 4 to 5 per cent. each. Certain limits were fixed beyond which neither partner was to draw from the profits of each year's business, for private and family expenses ; any amount drawn in excess of these limits by either of the partners *to be with consent of the others ; and the excess to be regarded as lent to such partner by the firm.* It was further 'agreed to, by and with William Raiguel, that the salary of John Langdon Wentworth shall be paid by the said William Raiguel.'

" On the 1st of January 1855, the same parties, with the exception of George Eckert, entered into 'a new co-partnership,' under the same name. This is the firm known as 'Raiguel & Co., No. 2.' The articles are identical with the former articles, except that the co-partnership was to continue for but one year, and that the rate of division of profits is changed as follows: William Raiguel, 30 per cent., Augustus H. Raiguel, 20 per cent., Samuel Moore, 17 per cent., and the remaining partners each 5½ per cent., except Skillman, who was to have 6 per cent. * * * The same agreement as to the payment of the salary of J. L. Wentworth is contained in the new articles, as in the former ones.

" On the 3d of May 1856, there was executed a Memorandum of Agreement—therein recited as having been made on the 7th of March 1855, but 'more formally reduced to writing' on the date of its execution—between and signed by William Raiguel, and J. L. Wentworth and Eben Wentworth. It is to the following effect : said J. L. Wentworth agrees with William Raiguel to continue in the employ of the firm of Raiguel & Co., 'as a clerk,' during 1855 and 1856 ; Raiguel to pay J. L. Wentworth for his services $2500 per annum ; said Raiguel, in consideration of the premises ' and of the indebtedness of the said J. L. Wentworth to

the said Eben Wentworth,' agrees with Eben Wentworth, that if said sum of $2500 shall not equal eight per cent. of the net profits of said firm during each of said years, Raiguel will pay to Eben Wentworth such other sum as, with the $2500, shall equal the eight per cent. of profits, which sum Eben Wentworth hereby agrees to accept in part payment of the sum of $11,499.34, now due to him by J. L. Wentworth. In case of the death of J. L. Wentworth before the end of 1856, Raiguel would pay to his legal representatives and to Eben Wentworth the sums in like manner as if J. L. Wentworth was living at that time.

" Raiguel & Co., No. 2, continued during the years 1855 and 1856 under the articles of January 1st 1855, though the term mentioned therein was but one year.

" January 1st 1857, articles of co-partnership were entered into, by all the partners who had composed the firm of Raiguel & Co., No. 2, and also by Edward A. Adams and Henry P. Atkinson, and John L. Wentworth, who was styled in the heading of the articles ' dormant partner,' the others being styled 'active partners.' The name of the firm was also Raiguel & Co., and is referred to as No. 3 ; it was to continue for three years. William Raiguel, in lieu of a percentage of the profits, was to receive in cash $8000 per annum, to have a general supervision of the affairs, but the active management to be conducted by the other partners, a majority of whom should settle all differences, &c., the decision of such majority to be final and binding upon all. The profits of the business after deducting losses, expenses, &c., and the compensation to William Raiguel, were to be divided as follows, to wit. : Augustus H. Raiguel, 22 per cent., Samuel Moore, 18 per cent., Skillman and ' John L. Wentworth,' each 8⅜ per cent., and the others from 5¼ to 7½ per cent. each.

" The amounts to be drawn out by the respective partners for private and family expenses, were as follows, to wit : Augustus H. Raiguel, $6000, Samuel Moore, $5500, ' John L. Wentworth, $3000,' Adams and Atkinson, each $2000, and the others, each $2500. * * * In the final closing and settlement of the business, should it be profitable, the collections of the firm made after its entire debts had been paid, to be applied so as should tend to make the partners' credits (except that of William Raiguel) proportioned to their respective interests as above detailed ; after the dissolution of the co-partnership, the books, papers and effects of the firm to remain in the hands of William Raiguel, and such other person as a majority of the members of the firm might select, free access being granted to the same to any member of the firm.

" On the 8th October 1857, William F. Smith, for the consideration of $1093.75, assigned to Raiguel & Co., No. 3, *inter alia,* all his interest in the late firms of Raiguel & Co., from the 1st January 1853 to the date of said assignment.

"In October 1857, Raiguel & Co., No. 3, suspended payment.

"December 3d 1857, Augustus H. Raiguel, in consideration of $10,000, assigned his interest in the three firms of Raiguel & Co., since January 1st 1853, to William Raiguel.

"On the 19th December 1857, John J. Ulp, in consideration of $2000, assigned his interest in the firms of Eckel, Raiguel & Co., and Raiguel & Co., since January 1st 1846, to William Raiguel.

"On the 14th March 1858, Raiguel & Co., No. 3, dissolved by mutual consent, and on or about the same day, the firm of Raiguel, Moore & Co., was formed, composed of William Raiguel, Samuel Moore, William G. Skillman, James M. Whitby, Edward A. Adams and Henry P. Atkinson, being the same who had composed the firm of Raiguel & Co., No. 3, leaving out John L. Wentworth, Bentley, Kintzle, and the three who had assigned their interests as above stated.

"In the books of Raiguel & Co., No. 1, at the commencement of the partnership, the accounts of the partners were opened on consecutive folios, regularly succeeding each other in the order in which the names were signed to the articles. Each partner had two accounts—one a general account, and the other an 'expense account;' and four of the partners, William Raiguel, Augustus H. Raiguel, Samuel Moore and William F. Smith, each had an additional account, entitled 'loan account.' The expense accounts were charged with the sums which the partners drew for their own use, and at the end of the year the totals were carried to the debit side of their respective general accounts.

"Immediately following the accounts of the partners was an account opened with D. B. Woodbury, who was the principal bookkeeper of the firm, then an account opened with J. L. Wentworth, followed by accounts of the different clerks and salesmen. No expense account or loan account was opened with John L. Wentworth, on the books of this firm. His amount was charged with cash from time to time, and credited at the end of the year 'By William Raiguel $2500,' and this account carried to the debit of William Raiguel's general account. In 1865, nearly four years after suit brought, another account entitled 'The J. L. Wentworth Interest Account,' was opened on the books. It was not pretended that this could have any effect on the rights of the parties.

"The accounts in the books of Raiguel & Co., No. 2, were opened in the same manner, except that an additional account was opened to William F. Smith, entitled "William F. Smith Special," and that upon the folios immediately succeeding the accounts opened to the parties who had signed the articles, were the following accounts, to wit, 'George Eckert—Store,' 'Peter Bridenthal —Store,' 'D. B. Woodbury—Store,' 'J. L. Wentworth—Store,'

succeeded by sundry accounts of clerks, salesmen, &c., employed by the firm, each of which accounts was designated on the books by the addition of the word 'Store.' An account to 'The J. L. Wentworth Interest,' was also opened on these books at the same time and under the same circumstances as the similar account on the books of Raiguel & Co., No. 1.

"The books of Raiguel & Co., No. 3, contained the accounts of the parties who signed the articles of co-partnership, in the same manner as the books of Raiguel & Co., Nos. 1 and 2, contained the accounts of the parties who signed the articles of those firms respectively. Among the others, John L. Wentworth has two accounts opened to him,—one a general account, and the other an 'expense account.' No other account to or concerning him individually is opened on the books of No. 3.

"William F. Smith had an arrangement in Nos. 1 and 2, with William Raiguel, by which the latter, out of his own proportion of the profits, allowed Smith one per cent. in addition to the percentage he was entitled to by the articles. No such arrangement existed in No. 3, but Smith was allowed by the articles themselves an increased proportion of the profits in comparison with the other partners, over what he had been allowed by the articles of the prior firms.

"Some testimony was introduced by the defendants, to show that John L. Wentworth had as much authority, discharged the same duties, and was treated by themselves, and regarded and treated by the employees of the firms, in the same manner in each of the three firms. This testimony was for the purpose of showing that John L. Wentworth was, in fact, a partner in Nos. 1 and 2, as well as in No. 3. * * * None of the witnesses were parties outside of the firms; and whatever might be the effect upon a contest in which third parties were striving to fix a liability upon John L. Wentworth, as a partner, the master cannot regard such evidence as operating in the present controversy to add or to vary the written instruments. The question of partnership *inter sese* must stand or fall upon the written instruments. So far as the mode of opening the accounts upon the books of the several firms goes, it shows that John L. Wentworth was, in Nos. 1 and 2, not regarded as a partner. * * *

"The master is of the opinion that John L. Wentworth, upon the proper construction of the written instruments, was not a partner in the firm of Raiguel & Co., No. 1, nor a partner of William Raiguel in a sub-copartnership. The agreement of December 31st 1852, was, in the opinion of the master, an undertaking for the employment of Wentworth as a clerk or agent in the service of Raiguel & Co., No. 1. The $2500 was to be paid in any event, irrespective of the profit or loss of the concern. Why the agreement was made by William Raiguel alone and not by the firm, did

not appear, nor is it material.  The $2500 was to be paid by William Raiguel—it was so understood and mentioned in the articles of copartnership.  The additional payment to be made to Mrs. Martha Wentworth,. was only in case six per cent. of the profits of the firm for the two years should exceed the amount of $2500 per annum ; that is, as the master construes this instrument, the payment to Mrs. Wentworth was not to be made annually, but at the close of the two years' business.  'And also to pay to Mrs. Martha Wentworth for her own use and benefit, a sum of money equal to six per cent. of the net profits of the business of Raiguel & Co. (after deducting all losses and expenses) for the years 1853 and 1854, less the sum of $2500 per annum, it being understood that the amount to be paid to John L. Wentworth and to Mrs. Martha Wentworth, together, shall be equal in amount to six per cent. of the net profits of the business of Raiguel & Co., for the two years before mentioned.'  There is no clause or expression in this agreement to the effect that if six per cent. of the net profits did not equal $2500 per annum, then the payment to John L. Wentworth was to be that much less than $2500 ; as would have been naturally inserted had such been the intention of the parties. If he was a partner, the most natural and simple course would have been for him to unite in the articles ; he might have been a salaried partner, or had a proportion of the profits, or been compensated by a combination of the two modes.  There was no inherent difficulty arising out of the special terms as to the amount or mode of payment, or the introduction of a third party as a recipient of a portion of what would be due on John L. Wentworth's account. * * *

 " How is it as to Raiguel & Co., No. 2, upon the written instruments ?  This partnership was formed January 1st 1855, upon the termination of that of Raiguel & Co., No. 1; John L. Wentworth was not consulted upon the formation of the ' *new* co-partnership,' January 1st 1855.  In fact, prior to March 7th 1855, two months after the ' *new* co-partnership' was formed, it would seem as if he had continued under the old arrangement tacitly ; the only apparent change in the members of the firm of Raiguel & Co., No. 1, which had been formed January 1st 1853, being the withdrawal of George Eckert as a partner upon the termination of the period limited by the articles ; and it appears from the books, that Mr. Eckert even remained in the employ of the new firm.  But on the 7th March 1855, a new agreement was made between J. L. Wentworth, William Raiguel and Eben Wentworth. This agreement was reduced to writing, executed and signed by the parties thereto, May 3d 1856, nearly fourteen months after it was made, and when there had been ample time for reflection and consideration of all the details ; when all doubts or questions, if any ever existed, as to the status or relations of John L. Went-

worth, in or to the firm, must have been fully settled and resolved. It should be borne in mind also, in this connection, that William Raiguel was the senior and principal partner of both of the firms of Raiguel & Co., Nos. 1 and 2; and had the purpose and intention of the parties been, that John L. Wentworth should be, in fact, a partner of Nos. 1 and 2, by reason of the agreements entered into between him and William Raiguel, the latter, it must be supposed, would have taken care to guard the rights and interests of his firm. But the very first article of the new agreement as reduced to writing in May 1856, more than three years after the agreement of December 31st 1852, had been made, is as follows: ' The said J. L. Wentworth agrees with the said William Raiguel *to continue* in the employ and to serve the said firm of Raiguel & Co., *as a clerk*, for and during the years 1855 and 1856, for the consideration thereinafter mentioned.' By the second article, William Raiguel promises to pay said J. L. Wentworth for his said services $2500 for *each* of said years. The third article is more clear than the corresponding provision of the agreement of December 31st 1852. By this article, William Raiguel promises and agrees to and with Eben Wentworth, that if the $2500 shall not equal eight per cent. of the net profits of said firm during each of said years, ' he, the said William Raiguel, will pay to said Eben Wentworth such other sum as with the said sum of $2500, shall equal the said eight per cent. of said profits after the business is settled up and the losses and expenses having been deducted for said years, which sum the said Eben Wentworth hereby agrees to accept in part payment of the sum of $11,499.34, now due to him by the said J. L. Wentworth.'

" The article of this agreement in reference to the death of J. L. Wentworth prior to the time limited for its expiration, differs in phraseology from the corresponding article in the agreement of December 31st 1852. * * *

" The master is of the opinion and so reports, that the intention of the parties was the same, notwithstanding the variation in phraseology; and that the evident intention was that John L. Wentworth should not in either case be a partner. But was he a partner in these two firms in fact, notwithstanding this intention as gathered from the instruments? * * * The only provision under which Wentworth could be held as a partner, is the fact that to some extent and in some manner he is interested in the profits. There was no community of ownership in the profits of Raiguel & Co., Nos. 1 and 2, between John L. Wentworth and the parties who signed the articles of co-partnership. William Raiguel was to pay him or on his account a certain sum, not exceeding in the one case six, and in the other eight per cent. of the net profits of the firm; this was his ' salary,' as a ' clerk.' * * * As respects the six and eight per cent. respectively, he could not have called

on Raiguel & Co., Nos. 1 and 2, for an account.   He could look only to William Raiguel. * * *

" J. L. Wentworth was interested in the profits of the firms of Raiguel & Co., Nos. 1 and 2, or in William Raiguel's share of those profits, to the extent and by reason of their being in part a compensation or salary for his services as a clerk in the employ of Raiguel & Co., Nos. 1 and 2 ; but it was only as such compensation or salary, and not by reason of his having any ownership or community in interest in the profits of those firms. * * * Even as to third parties, a commission upon profits, or an agreement to pay and receive a certain proportion of profits, either alone or in addition to a fixed sum, as a remuneration or salary for services rendered, will not constitute the party so remunerated a partner; there is a right to compensation proportionate to 'the profits, and not an interest in them. * * *

" The existence, upon the books of No. 1 and No. 2, of accounts entitled ' The J. L. Wentworth Interest Account,' has already been mentioned.   These accounts were opened by William G. Skillman, one of the defendants, and who, as the liquidating partner, had charge of the books and the collection of the assets of the four several firms mentioned.   In the course of the settlement of the affairs of Raiguel & Co., No. 3, the firm proved, contrary to the expectation alleged in the answer, more than solvent ; and after the debts of the firm had been paid, the proceeds of collections from and on account of their assets, were from time to time carried to the credit of the several partners, in the respective proportions stipulated in the articles of co-partnership.   Some time in 1865, the accounts of ' The J. L. Wentworth Interest' were opened in the books of Raiguel & Co., Nos. 1 and 2, and the amounts to which John L. Wentworth was entitled to be credited in No. 3, as his proportion of the proceeds of the assets, down to September 30th 1865, were debited to him on the books of the latter firm as carried to the credit of ' The J. L. Wentworth Interest Account' on the books of Raiguel & Co., No. 2 ; and the amounts to which he was entitled to be credited in No. 3, subsequently to September 30th 1865, were debited to him on the books of No. 3, as carried to the credit of ' The J. L. Wentworth Interest Account,' as opened upon the books of Raiguel & Co., No. 1.   It is these amounts to which, subject to the finding of the master in respect to certain specific items heretofore mentioned, John L. Wentworth is entitled—the master having found that he was not a partner in Raiguel & Co., Nos. 1 and 2.   The general correctness of the items is admitted by the complainants.

" The first item as to which there was a dispute between the parties, was as to a portion of the sum of $3207.58, charged to John L. Wentworth, on the books of Raiguel & Co., No. 3, as drawn by him from the firm. * * * No question was raised, ex-

cept as to one for $726.18, under date of December 1st 1857.
The only voucher for this was a slip memorandum in the handwrit-
ing of William G. Skillman, one of the defendants, who was the
cashier of Raiguel & Co., No. 3.    This memorandum was headed
' J. L. Wentworth owes drawer ;' and sundry amounts appear
charged thereon to him from time to time, some with date and some
without.    Among these amounts, one for $17.49 was admitted to
be an error, having been charged in another place previously.
John L. Wentworth denied all knowledge of the sums making up
the $726.18, except $17.49, and as this is charged against him
elsewhere, and the master is of opinion that there is no sufficient
proof of·the balance of the item as a matter of charge against
Wentworth, he is allowed a credit for the $726.18, under .date of
December 1st 1857."

The master then refers to the disputed items of account with the
plaintiff, reports and considers the evidence and states an account,
by which he finds that there was due to the plaintiff on the 1st of
January 1868, the sum of $18,731.66, with interest on $15,852,68,
part of it.

The master then proceeded :—

" It remains to consider the effect of the·assignment and sher-
iff's sale heretofore mentioned, upon the interest of Wentworth as
represented by said indebtedness.    The facts are as follows :—

" On the 30th June 1855, John L. Wentworth made his promis-
sory note, dated Portsmouth, N. H., June 30th 1855, to the order
of Eben Wentworth for $11,499.34, payable on demand with inter-
est until paid.    Eben Wentworth died August 13th 1860.    Sun-
dry payments to the amount of $750 on account of principal, and
$1905.05 on account of interest, the last of which bore date Janu-
ary 24th 1861, were endorsed on this note.

" John L. Wentworth executed and delivered the following
assignment :—

" ' Philadelphia, June 25th 1861.

" ' For and in consideration of the sum of $11,000, which I am
indebted to the estate of Eben Wentworth, deceased, of Ports-
mouth, N. H., I hereby transfer and assign as collateral security
therefor, to Catharine H. Wentworth, Mark H. Wentworth and
George J. Wentworth, executors of said Eben Wentworth, deceased,
all my interest in the assets of the firm of Raiguel & Co., of this
city, of which I was a partner, and all money which may be col-
lected by me, from my interest in said firm, is to be paid over to
said executors, until the amount due by me to said estate is paid.
Witness my hand and seal,

J. L. WENTWORTH.   [L. S.]'

" This assignment was sent immediately to the executors in

Portsmouth, and the following receipt therefor returned by them to J. L. Wentworth within a day or two thereafter :—

"'Portsmouth, June 28th 1861.

"'Received of J. L. Wentworth an assignment of his interest in the assets of the firm of Raiguel & Co., of Philadelphia, of which he was a partner, as collateral security for his indebtedness of $11,000 to the estate of E. Wentworth, deceased.'

"The fact of this assignment having been made, was not communicated to the partners of John L. Wentworth in the firm of Raiguel & Co., No. 3, until after the levy of the execution hereinafter mentioned. They were certainly informed of it at the time of the sale, and it is more than probable that they had been aware of its existence for some days prior thereto. * * * The master has no hesitation in reporting that the assignment was made, executed and delivered, and the receipt therefor signed and returned bonâ fide, at the times they respectively bear date, and before the filing of the bill in this case; and under the amendment filed by leave of the court, he regards the case as before him, with the same effect as if the substance of the amendment had been included in the bill as originally filed.

"On the 12th October 1861, after the bill in this case had been filed, an execution was issued upon a judgment obtained September 20th 1851, against John L. Wentworth, by Mott *et al.*, in the District Court of Philadelphia for $860.35. This execution was levied upon 'the right, title and interest of J. L. Wentworth, in and to the firm of Raiguel & Co., dry goods dealers, doing business at Nos. 220 and 222 North Third street.' On the 9th November 1861, Mr. Guillou, as attorney for the executors of Eben Wentworth, gave notice to the sheriff in writing that said executors claimed said right, title and interest under the assignment above mentioned; and on the 15th of the same month, an affidavit of said claim was filed with the sheriff, by Mark H. Wentworth, on behalf of himself and the other executors. The sheriff thereupon took a rule on the plaintiffs in the execution and the claimants to interplead, under the Act of 10th April 1848. This rule upon hearing was discharged by the District Court, on the ground that the interest in question was not such a chattel as was contemplated by the Act of Assembly. * * *

"About the last of November or the early part of December 1861, Edward G. James, purchased the judgment for $500, and the same was marked to his use of record December 2d 1861, the day of the sheriff's sale. This purchase was made at the request of Samuel Moore, one of the partners in Raiguel & Co., and in Raiguel, Moore & Co. Mr. Moore furnished Mr. James with the money for the purchase. It was purchased by Mr. James as a friendly act at the request of Mr. Moore.' * * *

[Raiguel's Appeal.]

" On the 2d of December 1861, the sheriff sold the interest levied on to Edward G. James for $1100.   At the sale notice was publicly given that J. L. Wentworth's interest in the firm of Raiguel & Co., belonged to the executors of his father under the assignment.

" On the 12th of December 1861, James gave notice to Raiguel & Co., of his purchase of Wentworth's interest.

" The master is of opinion and so reports, that the assignment transferred the entire interest of John L. Wentworth in the firm of Raiguel & Co., No. 3, to the executors of Eben Wentworth, deceased ; and that they are entitled to a decree for the whole amount found due to John L. Wentworth. * * *

" It was urged in argument, that the paper of June 25th 1861, was really no transfer, but a pledge or mortgage by John L. Wentworth of his interest ; that there could be no such pledge or mortgage under the law in Pennsylvania; that the sheriff sold the interest of John L. Wentworth, and the sale divested the pledge, even granting that there could exist such an unrecorded lien; and that the executors, if entitled to anything, should have claimed it out of the proceeds of sale.

" But the transfer was an assignment of the entire interest ; there was no possession that could be given of it.   The partnership was dissolved; John L. Wentworth had nothing to do with the management of the assets ; that was in the hands of Raiguel, Moore & Co., who had undertaken their collection, and prior to their assignment, had even discharged Wentworth from their employ in assisting in the collection.   There was no necessity to notify his co-partners, except to prevent any action on their part by which the rights of third parties in his interest might possibly have attached.   And there was no such action here.   As to creditors, there was no credit given on the faith of the apparent possession by John L. Wentworth of his interest.   There was no such possession distinct from the ownership as to constitute the assignment a fraud as regards creditors.   As the interest was not such a chattel, in the opinion of the District Court as to be within the meaning of the Sheriff's Interpleader Act ; so neither is it such a chattel as to be within the reason of the rule which forbids as against creditors, transfer of ownership without change of possession open, notorious and manifest.   There could be no such change. * * *

" The conclusions of the master upon the whole case, therefore, are that John L. Wentworth was not a partner in the firms of Raiguel & Co., Nos. 1 and 2, and cannot be held liable to make good any deficiency in the assets of those firms, or either of them, for the payment of their debts ; that the entire interest of John L. Wentworth in the firm of Raiguel & Co., No. 3, and in the assets of said firm, passed to the executors of Eben Wentworth, deceased, under the assignment of June 25th 1861; that this

[Raiguel's Appeal.]

assignment was unaffected by the sheriff's sale, December 2d 1861, under Mott's judgment ; that the purchaser at that sale took nothing thereby ; that the value of the interest of John L. Wentworth in the firm of Raiguel & Co., No. 3, and the assets of said firm is $18,731.66, including interest up to January 1st 1868, and interest on the sum of $15,852.68 from that date ; together also with his proportionate part, being 8⅜ per cent. of the proceeds of all the uncollected assets of said firm ; and that the defendants, William Raiguel, Samuel Moore, William G. Skillman, James M. Whitby, Christian Kintzle, Edward A. Adams and Henry P. Atkinson, should be decreed to pay to the executors of Eben Wentworth, deceased, the said sum of $18,731.66, with interest on the said sum of $15,852.68 from January 1st 1868, until paid, and also to pay to them from time to time as collected 8⅜ per cent. of the proceeds of the assets of the firm of Raiguel & Co., No. 3, which remained uncollected upon the 29th of September 1866, together with costs of suit ; that as to the defendant, Augustus H. Raiguel, he having assigned and transferred his interest in said firm of Raiguel & Co., No. 3, and in the assets of said firm prior to the dissolution thereof, and prior to suit brought, and as to the defendant, George Eckert, who never was a member of the firm of Raiguel & Co. No. 3, the bill be dismissed with their respective costs ; and that as to the defendant, Edward G. James, he be perpetually enjoined from in any manner interfering with, or collecting or attempting to collect from Raiguel & Co., No. 3, or from any one or more of the partners thereof, any of the assets of said firm, by virtue of said sheriff's sale to him December 2d 1861, of the right, &c., of John L. Wentworth in the firm of Raiguel & Co., No. 3, and that the said Edward G. James pay his own costs. The defendants, William F. Smith and Benjamin Bentley, not having appeared or answered, it is not for the master to report any action in respect to them."

W. Raiguel, Moore, Skillman, Whitby and Kintzle filed twenty-eight exceptions to the master's report, amongst them were the following :—

22. Reporting that no decree should be made in favor of complainant, and that he it not entitled to have an account stated by the master in this case, because John J. Ulp has not been made a party, plaintiff or defendant—it appearing from the complainant's bill, that said Ulp was a member of the three firms of Raiguel & Co., No. 1, No. 2, and No. 3.

24. Reporting a joint decree against William Raiguel, Samuel Moore, William G. Skillman, James M. Whitby, Christian Kintzle, Edward A. Adams and Henry P. Atkinson ; and in not finding and reporting some specific sum, or sums (if any) to be due by or to each of them.

25. Reporting that the entire balance, stated in the report to

be due to John L. Wentworth, should be paid by the defendants last above named, without taking into consideration the proportions thereof, which should be charged against John J. Ulp, who was a member of the several firms of Raiguel & Co., but was not made a party to these proceedings, and also, the proportions thereof which should be charged to Augustus Raiguel, George Eckert, William F. Smith and Benjamin Bentley, the other defendants to this bill.

27. Reporting that the defendants, William F. Smith and Benjamin Bentley, not having appeared or answered, it is not for the master to report any action in respect to them; whereas, the said master should have reported that they being parties defendant, jointly with the other defendants, no account or decree could be stated or made without joining them therein, and that therefore, there not appearing from the record to have been any decree *pro confesso* or otherwise, against said Smith and Bentley, the master could not report any action in respect to any of the defendants.

Exceptions were filed by other defendants also.

The court (SHARSWOOD, J.) sustained the twenty-seventh exception of Raiguel & Co.

Smith and Bentley appeared and filed an answer (as heretofore stated), the cause was referred back to the master and all other questions reserved till the coming in of the report.

In his second report, the master said : * * *

" That as to the defendant, William F. Smith, he having assigned and transferred his interest in the several firms of Raiguel & Co., prior to the dissolution of the firm of Raiguel & Co., No. 3, and prior to suit brought, the bill be dismissed with costs; and that as to the defendant, Benjamin Bentley, his assignment and transfer of his interest in said several firms of Raiguel & Co., having been subsequent to the filing of the bill, cannot affect his position or the rights of the plaintiffs, and that consequently, in accordance with the findings and conclusions of the master in his original report, the said Benjamin Bentley should, with the defendants, William Raiguel, Samuel Moore, William G. Skillman, James M. Whitby, Christian Kintzle, Edward A. Adams and Henry P. Atkinson, be decreed to pay to Catharine H. Wentworth, Mark H. Wentworth and George J. Wentworth, executors of Eben Wentworth, deceased, the sum of $18,731.66, with interest on $15,852.68 from January 1st 1868 till paid, and also with said other defendants named, to pay said executors from time to time as collected, 8⅜ per centum of the proceeds of the assets of the firm of Raiguel & Co., No. 3, which remained uncollected upon the twenty-ninth of September 1866, together with costs of suit."

After the coming in of this report the opinion at Nisi Prius was delivered February 4th 1871.

[Raiguel's Appeal.]

SHARSWOOD, J. : " When this case was here before on these exceptions, I sustained the twenty-seventh exception filed on behalf of William Raiguel and others; and as it appeared that two of the defendants had neither appeared nor answered, I refused to consider the other exceptions until these parties were disposed of on the record. That difficulty being now out of the way, the cause has been very fully heard upon all the points. I deem it altogether unnecessary to go into an extended discussion upon them. The learned master has saved me that labor, and I adopt his reasoning and conclusions, and dismiss all the exceptions except the twenty-second, twenty-fourth and twenty-fifth, on behalf of William Raiguel *et al.* I think John J. Ulp must be made a party to these proceedings, which on motion the plaintiff will have leave to amend his bill for the purpose of doing. It is certainly not in the power of a partner, by an assignment to another partner, or a stranger, to divest himself of his indebtedness to the firm at that time, unless it appears that the other members of the firm agreed to release him, and to accept his assignee in his place. Nor are the members of a co-partnership liable to each other *in solido :* Whelen *v.* Watmough, 15 S. & R. 153; McFadden *v.* Sallada, 6 Barr 287. A decree against the members of the firm in favor of the plaintiff for the whole balance due him by the co-partnership would not make them so. They are not sureties for each other's solvency, or if they are, the plaintiff is equally so with them. Upon a final settlement of a partnership account, it must be described how much each partner owes to each, unless by agreement it be dispensed with. The principle and mode are very clearly stated in Lindley on Partnership 828.

" The twenty-second, twenty-fourth and twenty-fifth exceptions filed on behalf of William Raiguel sustained, and all the others dismissed.

" The plaintiff allowed to amend his bill by making John J. Ulp a party, and after the case shall be at issue as to him to be recommitted to the master."

The master afterwards further reported :— * * *

" The duty of the undersigned upon the recommitment according to his understanding of the decision of the court upon the exceptions which were sustained, is to ascertain and report what proportion of the sum found due to the plaintiffs is to be charged against and decreed to be paid by each of the defendants, and what, if anything, is to be paid by either or any of the defendants to any of the others."

The master then made some slight changes in his statement of the account and found that the value of the interest of John L. Wentworth in the firm of Raiguel & Co., No. 3, on the 1st of July 1872, was $23,161.76, with interest on $16,189.87, part of that sum from that day, together also with his proportionate part, being

$9\frac{2}{37}$ per cent. of the uncollected assets; that the amount due on his indebtedness to Eben Wentworth's estate at the same date, was $18,908, with interest from that time on $10,749.34, the balance unpaid of the principal of the original debt.  He proceeded:—

" Under the decision of the court it remains to be determined what proportion of the sum found as the value of the interest of John L. Wentworth in No. 3, is to be paid to the executors of Eben Wentworth, deceased, by each of the partners."

The master found that the interests of the partners were in the following proportions:—

| | |
|---|---|
| Augustus H. Raiguel . . . . . | $23\frac{29}{37}$ |
| Samuel Moore . . . . . . . | $19\frac{17}{37}$ |
| W. G. Skillman and John L. Wentworth, each $9\frac{2}{37}$ | $18\frac{4}{37}$ |
| J. M. Whitby, B. Bentley, C. Kintzle, each $7\frac{1}{37}$ . | $21\frac{3}{37}$ |
| John J. Ulp . . . . . . . | $6\frac{8}{37}$ |
| E. A. Adams and H. P. Atkinson, each $5\frac{25}{37}$ . | $11\frac{13}{37}$ |

William Raiguel was to receive $8000 per annum in lieu of any of the profits, to be deducted before any division of profits was made amongst the other partners.

The master, with much elaboration and detail, stated the manner in which the account of John L. Wentworth had been kept as between firms No. 2 and No. 3, the account treating him as a member both of No. 2 and No. 3, and Adams and Atkinson as members of only No. 3.  Adams and Atkinson received their proportion of the balance of the assets of No. 3, collected by Raiguel, Moore & Co., after payment of the debts of No. 3, the remainder was debited on the cash-book as if so much cash had been received from No. 2, in part payment of their indebtedness to No. 3, and then credits were entered on the cash book, and debits entered to the individual partners' accounts in the ledger of No. 3 in proportion to their interests.  The account of No. 2 on the ledger of No. 3 was credited with the amounts debited on the cash books.  " The practical effect was that so much of the debt of No. 2 to No. 3, as was represented by the aggregate sums thus charged to the respetive partners, exclusive of cash paid and charged to Adams and Atkinson, appeared on the books as paid and discharged, although no cash actually passed in the transactions.  And this would have been unobjectionable, if all the parties so charged on the books of No. 3 had actually been partners in No. 2 and No. 1.  But it is quite another thing as regards a party who never was a partner in No. 2 and never appeared as such until the opening of the account in 1865, styled ' The J. L. Wentworth Interest Account' (long after this suit was brought), where he is treated in this manner and the cash to a proportion of which he was actually entitled with Adams and Atkinson is divided between them only and he attempted to be satisfied with the dry husks of an arbitrary, and so to speak, *ex post facto*, book-keeping, by which his just share is

deliberately appropriated to the reimbursement of sums which had long before been paid to him absolutely as salary and towards the payment of a debt for which he was not only in no way liable but to a proportion of which when paid he was actually entitled as a member of the firm to which it was due. * * *

" The ' John L. Wentworth Interest Accounts' on the books of No. 1 and No. 2 were opened on the assumption that Wentworth being a partner and interested in the firms to extent of 8 per-cent. and 6 per cent. respectively, was liable to make good in corresponding proportions the losses or deficits in the profit and loss accounts of these firms ; and the $2500 per annum which Wentworth had drawn on his salary under the agreements with William Raiguel, were in making up these ' John L. Wentworth interest accounts', treated as so much drawn on account of these percentages, and consequently—since no profits had been made by these firms—as being overdrafts which he was bound to make good. * * *

" Then it is of the utmost importance to recall the fact that . there was no question of losses arising out of a deficiency of assets to meet liabilities to creditors. The deficiencies or debtor balances in No. 1 and No. 2, arose entirely from overdrafts by the other partners, and they alone were bound to make good these debtor balances in proportion to their overdrafts. There was nothing for Wentworth to make good, even if he had been a partner, as between himself and the others ; and under the facts in the case it was a matter entirely *inter sese,* there being no question as to liability to third parties. * * *

" All the indebtedness of No. 2 and No. 1, except that of No. 1 to No. 2 and No. 2 to No. 3, had been paid by the last firm as well as its own debts prior to any distribution being made to the individual partners of No. 3. The amounts therefore which were debited to J. L. Wentworth's individual account on the books of No. 3, were treated by his co-partners as so much actual cash, and instead of being paid to himself or his assignees, who were entitled to receive the amounts, they were actually appropriated under the assumption that he was a partner or interested in No 1 or No. 2 to making good his assumed overdrafts and liability for contribution to the debtor balances in these former firms and consequently to the relief or benefit pro ratâ of those of them who were really and in fact partners in the former firms. * * *

" The amounts credited to ' The J. L. Wentworth Interest Account,' on the books of No. 1, were really carried by anticipation on the 30th of September 1865 to the discharge or reduction of the indebtedness of that firm to No. 2, and consequently the actual receipt and benefit of all these moneys was realized by No. 2, as a firm ; and the practical effect is the same as if the aggregate of the amounts credited in the periodic distribution on the cash-book of No. 3, as credited to the respective parties on the

books of No. 1, including the amount so credited to ' The J. L. Wentworth Interest Account,' had been debited on the cash-book of No. 3 as if received direct from No. 2. If the indebtedness of No. 1 to No. 2 had not, by the entry on the cash-book of No. 2 above mentioned, been cancelled and discharged, there would have been a deficiency of just so much in No. 2 to meet the indebtedness of No. 2 to No. 3. These are all to be treated as transfers to No. 2, and · as jointly appropriated by those partners in No. 3, who were partners in No. 2, to meeting the indebtedness of the latter to the former, and these partners must account for the sums so appropriated. But account for them in what manner? In proportion as they were eventually actually carried to their respective credits as individuals composing the firm of Raiguel & Co., No. 2—or *in solido* as jointly and severally liable for the whole amount? The credits from time to time on the cash-book of No. 3, were given to No. 2, as a firm, and so much of the indebtedness of that firm, not the indebtedness of the individual partners therein, to No. 3, was thereby from time to time settled and discharged. It was treated and credited as cash and was in effect so much cash appropriated *in solido* by the partners in No. 3, who were partners in No. 2 from No. 3, to the cancellation or payment of so much of the indebtedness of No. 2, as a firm to No. 3. * * * With the distribution or crediting or appropriation of this amount amongst the partners of No. 2, after that firm had received it, Wentworth, who was not a partner in that firm, could not interfere and had nothing to do. The crediting to the individual partners of No. 3, on the cash-book of No. 3, * * * merely serves to show what portion of the sums thus appropriated belonged to the other partners and what to Wentworth's interest; and for this latter portion the partners in No. 3, who composed No. 2, and who as a joint body or firm received the amount so appropriated are in the opinion of the master liable and must account *in solido*. * * *

" As the accounts of the partners of No. 3 have been made proportionate as respects all other items of debit and credit, so that nothing else remains to be settled between the partners, irrespective of the amount due on account of J. L. Wentworth's interest in No. 3; and as the other partners have been properly debited and credited in respect to the amounts included in the monthly distributions, a decree on the principles as above indicated will make a final accounting between all the partners. The uncollected assets will of course have to be distributed from time to time as received in the proportions indicated by the master. When these shall have all been collected and distributed and the amounts paid which may be due under a final decree in this case, the books can be closed." * * *

The master reported as his conclusions on the whole case :—

1. That John L. Wentworth was not a partner in the firms No. 1 and No. 2, and is not liable for any deficiencies in those firms.

2. That there was no deficiency of assets to pay the debts of either of those firms; that any deficiency for the payment of the indebtedness of No. 1 to No. 2, and No. 2 to No. 3, arose from overdrafts of the partners; that Wentworth made no overdrafts in either firm and had he been a partner, he could not, as between himself and those who were members, be called on to contribute to make up the deficiencies or pay their indebtedness to the succeeding firms.

3, 4. That John L. Wentworth's interest in No. 3 passed to the executors of Eben Wentworth, deceased, by the assignment of June 25th 1861; and that this assignment was unaffected by the sheriff's sale under Mott's judgment, and that the purchaser or his assignee, Moore, took nothing by that sale.

5. That the value of John L. Wentworth's interest in No. 3 was $23,161.79, with interest on $16,189.87, part of it, from July 1st 1872, with his proportionate part, $9\frac{2}{37}$ per cent. of the uncollected assets.

6. That the defendants, W. Raiguel, Moore, Skillman, Whitby, Bentley, the executrix, &c., of A. H. Raiguel, the executors, &c., of Kintzle, and the administratrix, &c., of Ulp, be decreed to pay to the executors, &c., of Eben Wentworth, the sums, &c., stated in the foregoing paragraph with costs.

7. That W. Raiguel, Moore, Skillman, Whitby, Bentley, Adams and Atkinson pay to the executors, &c., of Eben Wentworth, dec'd, from time to time as collected $9\frac{2}{37}$ per cent. of the proceeds of the assets of No. 3, which were uncollected September 30th 1871, and that Adams and Atkinson pay their own costs.

8. That as to W. F. Smith and the administrator, &c., of George Eckert, who was never a member of No. 2 or No. 3, the bill be dismissed with costs.

9. That Moore, the assignee of James, and the administrator, &c., of James, be enjoined from collecting, &c., from the firm No. 3, or any of its partners, any of the assets, &c., of that firm; and that Moore and the administrator, &c., of James, pay their own costs.

A number of exceptions to the master's report were filed by the defendants against whom decrees were recommended.

After argument, the court at Nisi Prius dismissed all the exceptions and confirmed the report.

The opinion was delivered February 8th 1873.

SHARSWOOD, J.—"When this case was before me on exceptions to the first report of the master, I dismissed all the exceptions but the twenty-second, twenty-fourth and twenty-fifth. The administratrix of Ulp having been made a party and filed an answer, that defect in the proceedings is supplied. The other two exceptions

were grounded upon the objection that the master had reported an account of the plaintiff with the firm of Raiguel & Co., No. 3, of which firm alone he was found to be a member, had recommended a decree in his favor, against the other members of that firm, and had not made a final settlement of the partnership, by ascertaining the balances due by and to each partner separately. I saw then nothing on the face of the report which ought to vary the rules which seem to be well settled in regard to partnership accounts generally. It was accordingly referred back to the master to reconsider and report as to these matters.

" Upon his supplemental report, he finds very distinctly, and there is no evidence before me upon which I can re-examine that finding, "that nothing else remains to be settled between the partners, irrespective of the amounts due on account of John L. Wentworth's interest in No. 3." He has also found, that this indebtedness of the firm of Raiguel & Co., No. 3, to John L. Wentworth, arose entirely from misappropriation by the other members of the firm, who were members of the firm No. 2, of the assets of No. 3, to the payment of the debts of No. 2. He hence draws the conclusion, that the members of No. 2, who are members of No. 3, are liable to the plaintiff *in solido*. It would follow that justice could be done in no other way, than by a decree against the defendants *in solido*, and until one or more of these defendants pay this amount, there can be no decree as between themselves, settling their respective contributory shares. That must be left to a subsequent proceeding.

" If these facts were stated in the former report, I failed to extract them from it, or they were not distinctly brought to my notice. They very much affect the view to be taken of the case. To simplify the matter ; if the assets of a firm of A., B. & C., are applied to pay the debts of a former firm of A. & B., without the consent of C., it would seem that, as A. & B. would be liable to answer *in solido* to the firm of A., B. & C., A. & B. must in equity be held *in solido* to C. for his share of such debts. Prior to the Act of April 14th 1838, Pamph. L. 457, the firm of A., B. & C. could not have maintained an action at law against the firm of A. & B. The appropriate remedy of C. would have been a bill to account. If, as the master reports, all other accounts between the members of the firm of A., B. & C. have been settled, except what grows out of this misappropriation of the assets of A., B. & C. to the injury of C., I see no objection to such a decree as will do justice between the parties. I observe that the bill distinctly avers the fact of the misappropriation. It follows, that until either A. or B. pay this debt for which they are jointly and severally liable, what they respectively owe each other, cannot be ascertained and settled. The Act of 1838, which gave the remedy at law, did not take away the previously existing remedy in equity.

[Raiguel's Appeal.]

" On the whole, then, I have come to the conclusion to dismiss these exceptions, and confirm this report."

The following are the material parts of the decree :—

3. That the defendants, William Raiguel, Samuel Moore, William G. Skillman, James M. Whitby, Benjamin Bentley, Anna M. Raiguel, executrix of Augustus H. Raiguel, deceased, Mary Ann Kintzle and Charles W. Otto, executors of Christian Kintzle, deceased, and Harriet K. Ulp, administratrix of John J. Ulp, deceased, do pay to the plaintiffs, Catharine H. Wentworth, Mark H. Wentworth and George J. Wentworth, executors of Eben Wentworth, deceased, the sum of $23,747.31 (being the sum of $23,161.77, together with interest on the sum of $16,189.87, part thereof from the 1st July 1872, to the date of this decree), together with the costs of this suit.

4. That the defendants, William Raiguel, Samuel Moore, William G. Skillman, James M. Whitby, Benjamin Bentley, Edward A. Adams and Henry P. Atkinson, do pay to the said plaintiffs, Catharine H. Wentworth, Mark H. Wentworth and George J. Wentworth, executors of Eben Wentworth, deceased, from time to time, as collected, $9\frac{2}{37}$ per cent. of the proceeds of the assets of the firm of Raiguel & Co. No. 3, mentioned in the bill, which remained uncollected on the 30th September 1871; and that the said defendants, Edward A. Adams and Henry P. Atkinson, pay their own costs.

5. That the defendants, William S. Mann, administrator of Edward G. James, deceased, and Samuel Moore, assignee of Edward G. James, be perpetually enjoined from in any manner interfering with, or collecting or attempting to collect, from the said firm of Raiguel & Co., No. 3, or from any one or more of the partners thereof, any of the assets or profits of the said firm, or any proportion or share of such assets or profits, under or by virtue of the said sheriff's sale to said Edward G. James on December 2d 1861, of the right, title and interest of John L. Wentworth in the said firm of Raiguel & Co., No. 3 ; and that the said William S. Mann, administrator of Edward G. James, and the said Samuel Moore, as assignee of said Edward G. James, pay their own costs.

W. Raiguel, Moore, Skillman, Whitby, the executrix, &c., of A. H. Raiguel, the executors, &c., of Kintzle, Adams and Atkinson appealed to the Supreme Court in banc.

They assigned eighty-one errors, covering in detail all the disputed questions ruled against them by the master's report.

*G. M. Dallas* and *J. E. Gowen*, for appellants.

*W. J. McElroy* and *F. C. Brewster*, for appellees.

Mr. Justice WOODWARD delivered the opinion of the court, May 8th 1876.

The fourth clause of the decree at Nisi Prius was in these words: "That the defendants, William Raiguel, Samuel Moore, William G. Skillman, James M. Whitby, Benjamin Bentley, Edward A. Adams and Henry P. Atkinson, do pay to the said plaintiffs, Catharine H. Wentworth and George J. Wentworth, executors of Eben Wentworth, deceased, from time to time as collected, $9\frac{2}{37}$ per cent. of the proceeds of the assets of the firm of Raiguel & Co., No. 3, mentioned in the bill, which remained uncollected on the 30th of November 1871, and that the said defendants, Edward A. Adams and Henry P. Atkinson, pay their own costs." It is objected by the appellants that Adams and Atkinson were erroneously included in this clause of the decree. As they had not been partners in the firms of Raiguel & Co., Nos. 1 and 2, they were not held accountable for any part of the sum of $23,747.31, which the master found to be due and payable to the plaintiffs. That sum was charged upon those of the defendants who had composed those firms. John L. Wentworth, like Adams and Atkinson, was a partner in firm No. 3, and his profits had been absorbed in providing for debtor balances due from firms Nos. 1 and 2. These balances were found by the master not to have been caused by a "deficiency of assets for the payment of the debts of either of those firms, but that any deficiency of funds for the payment of the indebtedness of No. 1 to No. 2, and of No. 2 to No. 3, arose from over-drafts of the partners in the respective firms." For that liability Adams and Atkinson were held not to be responsible. But as to the uncollected assets their position is different. The master has reported the indebtedness of No. 1 to No. 2, and of No. 2 to No. 3, to have been settled and discharged on the 30th day of September 1865. The claim of the plaintiffs on the uncollected assets is simply for the partner's share of John L. Wentworth in earned but undivided profits. As all the partners other than Wentworth are to participate in the division, all of them are liable for his proportion of all the partnership funds. It is said that, like Wentworth, they were creditor partners in No. 3. Even if the fact were so, that would raise a question between them and the members of firms Nos. 1 and 2; but the credits on the books of the firms on the 30th of September 1865, would indicate that their indebtedness to No. 3 was fully paid.

On other grounds, however, the part of the decree in question was improvidently drawn. So far as it decides the liability of the defendants, it is unobjectionable. But it peremptorily directs the payment to the plaintiffs of a percentage on unascertained sums to be recovered out of assets wholly undescribed. At the utmost the declaration of the liability of the defendants would only be the foundation of a future proceeding. If the attention of the

30 P. F. SMITH—17

[Raiguel's Appeal.]

judge had been drawn to it at Nisi Prius, the decree would have been modified there.   As it stands, it would be incapable of enforcement.

From facts shown by the record, but which do not appear on the paper-books, a doubt may be entertained whether the master was justified in reporting that there was no sufficient proof of the item of $726.18, under date of December 1st 1857.   But a master's report is not to be set aside on the ground of such a doubt.   As the facts were found, the disposition of this item cannot be disturbed.

The other questions in the cause appear to have been accurately decided by the master and the court, and require no review.

> The fourth clause in the decree made on the 8th of February 1873, is modified so that the same shall read as follows :—4. That the plaintiffs, Catharine H. Wentworth and George J. Wentworth, executors of Eben Wentworth, deceased, are entitled to receive from the defendants, William Raiguel, Samuel Moore, William G. Skillman, James M. Whitby, Benjamin Bentley, Edward A. Adams and Henry P. Atkinson, from time to time as collected, $9\frac{2}{37}$ per cent. of the proceeds of the firm of Raiguel & Co., No. 3, mentioned in the bill, which remained uncollected on the 30th of November 1871 ; and that the said defendants, Edward A. Adams and Henry P. Atkinson, pay their own costs. With this modification, the decree is affirmed.   And it is ordered that the record be remitted to the Court of Common Pleas of the city and county of Philadelphia.