## Bunting *v.* Bunting.    Appeal of Showell.

199        27
d202      ²412

*Partnerships—Special partnership—Accounting—Act of March* 21, 1836, *P. L.* 143, *sec.* 18.

Under the Act of March 21, 1836, P. L. 143, sec. 18, relating to special or limited partnerships, all of the partners may for the purpose of accounting be regarded as general partners, and their partnership subject to the legal and equitable rules relating to general partnerships.

Where the articles of a special or limited partnership organized under the act of March 21, 1836, provide that the profits of the business of the firm are to be divided and the losses borne by the several partners, general as well as special, in certain fixed proportions, a general partner cannot, in the absence of an express agreement to that effect, be required to make good to the special partner any loss sustained by her on her contribution to the capital resulting from the failure of other partners to pay their proportions of the business losses to the firm.

Argued Jan. 14, 1901.    Appeal, No. 272, Jan. T., 1901, by defendant, from decree of C. P. No. 1, Phila. Co., March T., 1896, No. 1210, on bill in equity in case of James A. Bunting, Samuel J. Bunting and Charles A. Bunting, Executors of the Estate of

Susanna L. Bunting, Deceased, v. James A. Bunting, John B. M. Showell, Appellant, and Mary M. Bunting, and James A. Bunting, Executors of the Estate of J. Ridgway Bunting, Deceased.   Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ.   Reversed.

Bill in equity for a partnership accounting.

The facts are fully stated in the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*John G. Johnson,* with him *John Weaver,* for appellant.— There was no duty on the part of Showell, a creditor partner, to make good to the other creditor partner any portion of the debtor balance owing by the debtor partners, whether resulting from withdrawals or otherwise : Raiguel's App., 80 Pa. 234 ; Nowell v. Nowell, L. R. 7 Eq. Cases, 538 ; Portsmouth v. Donaldson, 32 Pa. 202 ; Everly v. Durborow, 1 Legal Gazette Rep. 127 ; McFadden v. Sallada, 6 Pa. 285 ; Whelen v. Watmough, 15 S. & R. 153.

Under the special method of liquidation and distribution of assets upon final settlement, prescribed by the articles of partnership, there was no duty on the part of Showell to make good to Mrs. Bunting any loss of the capital.

*Richard C. Dale,* for appellees.—In equity, debtor balances owing by insolvent partners must be shared by the solvent partners : Wadeson v. Richardson, 1 Vesey & Beames, 103 ; Emerick v. Moir, 124 Pa. 498 ; Lindley on Partnership, *769.

Opinion by Mr. Justice Brown, April 1, 1901 :

This is a bill by the executors of a special partner, asking for an accounting by the general partners and for a decree that one of them, the appellant, the others being insolvent, pay them such sum as may be found due to them by him.   The Act of March 21, 1836, P. L. 1836, section 18, P. L. 143, provides : " The general partners shall be liable to account to each other and to the special partners for the management of their concern, both in law and equity, as other partners now are by law."   For

the purpose of accounting, these partners may, therefore, be regarded as general partners and their partnership subject to the legal and equitable rules relating to general partnerships.

The general partners of this firm were J. Ridgway Bunting, James A. Bunting and John B. M. Showell, the appellant. The special partner was Susanna L. Bunting, deceased, whose executors filed the bill in the court below, praying that an account be taken of the affairs of the partnership and that a decree be made ordering the said John B. M. Showell to pay to them such sum as might be found due and payable by him to them. J. Ridgway Bunting had died insolvent before the expiration of the partnership, and James A. Bunting was so when the bill was filed. The profits of the business of the firm were to be divided and the losses borne by the several partners, general as well as special, in the following proportions:

| | |
|---|---|
| J. Ridgeway Bunting, . . . . . | $32\frac{1}{2}\%$ |
| James A. Bunting, . . . . . | $22\frac{1}{2}\%$ |
| John B. M. Showell, . . . . . | $22\frac{1}{2}\%$ |
| Susanna L. Bunting, . . . . . | $22\frac{1}{2}\%$ |

Unable to recover anything from the insolvent estate of J. Ridgway Bunting, or from James A. Bunting, the appellees instituted this proceeding to compel Showell to pay to the estate of the deceased special partner one half of the loss sustained on her capital invested in the business. This loss was due to the unpaid indebtedness of the deceased and living insolvent partners to the firm, and for a portion of it, the referee concluded that the appellant was liable to the estate of the special partner. He found that a loss of $31,939.82, due to the said failure of the Buntings to pay what they owed the firm, should be borne in equal proportions by Showell and the estate of Mrs. Bunting, and, taking into account what the firm owed each, awarded to the latter, to be paid by the former, $15,120.79, with interest from the date of the final settlement of the business. The decree recommended by him was formally made by the court, without, as too frequently happens, giving any reasons of its own; and, on this appeal, we must first consider the question of the liability of a solvent partner to a copartner for the default of one or more of their copartners, resulting in the impairment of capital voluntarily furnished by the complain-

ing partner at the formation of the partnership for the purposes
for which it was formed.

The referee found as facts that the amount due Mrs. Bunt-
ing from the firm was $82,121.49, and to Showell $1,617.90,
and that the two insolvent partners owed the firm, according
to his final statement of the account upon which he recom-
mended the decree, the sum of $83,919.97, which he inadver-
tently says is the exact amount due Mrs. Bunting and Showell,
the indebtedness of the two insolvent partners to the firm
being $180.58 in excess of what is needed to pay them. Af-
ter so inadvertently stating that the aggregate amount due
Mrs. Bunting and Showell "is the exact amount of the aggre-
gate indebtedness of the other two partners to the firm," he
adds, "and, if they both paid up, there would be a distribution
of the whole fund between Mrs. Bunting and Mr. Showell in
the proportion in which they are creditors of the firm. The
estate of J. Ridgway Bunting is insolvent, and so is James A.
Bunting, and nothing can be recovered from either. How far,
therefore, is Mr. Showell liable to make good to Mrs. Bunting
her loss of capital out of his own pocket?" He then proceeds,
without any satisfactory reasons for his conclusion, and admit-
ting that he could find no authority to sustain him, to say:
"After mature deliberation, the referee is of the opinion that
so far as the loss suffered by the complainant is due to losses
suffered in the business she is entitled to be recouped by the
other partners in the proportions set out in the articles of co-
partnership, and since two of them are insolvent and are unable
to respond she is entitled to have the loss which she suffers in
consequence of their inability to respond shared equally with
her by the defendant Showell, who should therefore pay to her
one half of the loss which J. Ridgway Bunting's estate and
James A. Bunting are liable for to the firm, on this account."
Though the amount of this indebtedness due the firm by these
insolvent partners was a fund more than sufficient to pay what
a settlement of the books showed was due to Mrs. Bunting and
Mr. Showell, the referee deducts from it so much as was made
up of overdrafts by them, amounting to $51,981.51, and, by a
process of reasoning, which we need not consider, in view of
our judgment about to be expressed, he concluded that, so far
as these overdrafts were concerned, there was no liability on the

part of Mr. Showell to Mrs. Bunting, but as to the rest of the indebtedness, there was, and recommended a decree accordingly. If the insolvent partners were indebted to the firm, as found by the referee, partly from overpayments to them and partly from their failure to pay their shares of losses incurred in the business, the legal and moral obligation to pay one part of the indebtedness was no greater nor ·less than to pay the other. Such liability extended, without conceivable difference, as well to what they owed the firm for their proportions of the losses of the business, assumed and agreed to be paid by them, as to the overpayments made to them. But it is not important for us, as just stated, in the light of the view we are about to express, to further dwell upon this feature of the case.

If the appellant ought to pay the appellees, as directed by the decree before us, his liability must be found either in his contract of partnership with the deceased special partner, or in the general and equitable principles regulating the reciprocal rights and duties of partners. In the articles of partnership, he agreed with those about to become his copartners to pay to the firm twenty-two and one half per cent of losses incurred, and they agreed that he should receive the same percentage of profits realized. He has paid his proportion of these losses, and his express agreement has been kept. J. Ridgway Bunting and James A. Bunting made similar covenants in these articles of agreement; but there is no line in them showing that Showell agreed with the special partner that he would be surety for the general ones for the performance of their covenants, and that, if they should not pay their proportions of losses, assumed by them and necessary to make good impaired capital, voluntarily contributed by her in the first instance, he would do so for them. Each partner, in contracting with his fellows, contracted for himself alone, and no one of them, in establishing their partnership relations, expressly undertook to assume any liability to the rest for the default of one of their number. In the absence of any express agreement making him liable, can the appellees insist upon the liability of the appellant under any implied agreement presumed, upon equitable principles, to be the unwritten part of written articles of copartnership?

In the formation of partnerships, risks of liability, not contemplated at the time and not provided for in the articles of

agreement, are necessarily assumed by the parties to them, and, when it is incurred, it must be borne upon equitable principles. Among these risks is that of the increased liability of one or more members of the firm, if its enterprise be not successful, arising from the inability of the rest, through insolvency, to bear their part of the burden. When all the partnership capital originally contributed has disappeared in unprofitable ventures, and there are no firm assets to meet the claims of firm creditors, the solvent partners must pay; and one such paying, in relief of the others able to pay, can call upon them for contribution, without regard to those who cannot. When Showell became a member of this firm, he assumed the risk that some time, with its capital spent and its assets gone, its creditors would ask for payment; that its solvent members would have to pay, in which event he, or either of them, paying in behalf of all able to pay, could ask contribution from them; but it is not because Mrs. Bunting incurred any such liability for the appellant that her executors are now asking that he pay them. Her contribution to the firm, as a special partner, was to be $75,000. She never paid, nor was called upon to pay, any more to or for the firm, and all of its creditors have been satisfied. Upon the assumption that she contributed this sum, her executors are now asking that the appellant, as one of her copartners, pay her estate one half of the loss to the capital contributed by her, resulting from the failure of the two insolvent partners to pay into the treasury of the firm the proportions of its losses, as they had agreed in their compact with their copartners. Even if the appellant is not estopped from showing that she did not contribute the $75,000, as she had agreed she would, it is admitted that she never paid any more for the relief of the firm, or for any of its members. It is because her contribution to the firm's capital was impaired by the failure of the two insolvent partners to bear their proportions of losses which they had covenanted to bear that her executors now ask the appellant to answer for their default. By his express contract with her, there is no such liability to her or her estate. He agreed to pay to the firm twenty-two and one half per cent of all losses which it sustained; but he entered into no agreement to make good to Mrs. Bunting any loss sustained by her on her contribution to the capital, resulting from the failure of

other partners to pay their proportions of the business losses of the firm. Each of the partners contracted for himself, and as Showell contracted, so he has performed. He was to pay twenty-two and one half per cent of the losses. He has so paid, and it cannot be found in his written contract that he is now to pay for the others.

In considering the general equitable principles relating to partnerships, can reason be found, outside the partnership agreement, why the decree against this appellant should have been made? Confidence, as a rule, is the basis of partnership. Men, coming together for the purpose of a joint business enterprise for their common profit, do so because, first, they have confidence in each other, and, secondly, because they are confident that, as associates, success awaits them. Confidence so starts partnership, and loss of it leads to dissolution: Lindley on Partnership, 973. In the formation of a partnership, failure is regarded by the members only as a possibility, and, in so contemplating it, no one of them feels that he will be called upon to make good the unpaid capital of the firm for a greater amount than the proportion of the losses he agrees to bear. Each member feels that the others will pay their shares of the losses resulting in the impairment of the capital, and no one of them understands that he is to be surety for any one who may become insolvent and unable to pay his share of such losses. If, in very exceptional instances, confidence is not at the foundation of partnerships, the parties to them, dealing with each other at arm's length, must provide in their agreement for such liability as the appellees are now contending rests upon the appellant. But, dealing with each other in confidence, as these partners did, the presumption is conclusive that each covenanted for himself alone as to the payment of losses impairing the capital, and that no one of them understood he could be called upon to bear the proportion of losses impairing the capital, which another had agreed to pay. If Mrs. Bunting contributed $75,000 to the capital of the firm, she subjected it to the risk of loss, if the business should prove disastrous, and her copartners each agreed that they would bear a certain percentage of the losses; and, to the extent that each so agreed to pay, her executors have a right to insist that he do pay into the firm's treasury, from which her estate can receive its proper proportionate return on the capital.

There was no agreement, however, by the partnership with her, nor by the members thereof, that any loss of her capital should be made good, except as just stated. If she actually did contribute her money to the firm, and even thought at the time that the capital might be impaired or lost, a risk assumed by her, she read nothing in the paper containing the conditions of her contribution that, if impaired or lost, it should be returned to her; but she did read that these partners, severally, each for himself, and no one for another, had all agreed to bear a fixed percentage or specific share of the losses. In a controversy by partners, inter sese, when each is trying to rescue as much as possible of the capital which he originally contributed, and which is impaired or in danger of loss, simply because some of the copartners cannot pay their proportions of the losses in the business which they had agreed to pay, the liability of each partner is discharged when he bears what he had agreed to bear. Such is the case now before us. All the creditors of the firm have been paid. Showell has borne all he agreed to bear. The executors of Mrs. Bunting are insisting, however, in their effort to save a portion of the capital contributed by her, that, in addition to what he has already paid, in full discharge of his promise to pay his share of the losses, he shall pay for his copartners, who cannot. This was no part of his undertaking, and could not have been the understanding of Mrs. Bunting when she furnished the capital to the firm. To make him so liable, would be to rewrite the contract between the parties with the hand of judicial force in the face of common reason. Showell could have become surety to Mrs. Bunting for her sons, who were his copartners; but he did not. In the express terms of the agreement, no such covenant is found, and, in the absence of it, his suretyship for his fellows cannot be implied; for partners are not sureties for each other's solvency: SHARSWOOD, J., in Raiguel's Appeal, 80 Pa. 234.

The fifth assignment of error raises the fundamental question on this appeal. It is sustained, and the others need not, therefore, be considered. The decree of the court below is reversed and the bill dismissed, at the costs of the appellees.